STATE OF MISSOURI, Respondent, *v.* CHARLES WILLIAMS, Appellant.

### June 20, 1882.

1. A plea in bar, to a conviction under a provision of the statute, that "from the official journals of the senate it appears that the bill for such alleged statute was read only twice in said senate prior to the signing thereof," is not sufficiently certain, and a failure to traverse it is not an admission that the bill was read only twice.

2. It does not appear that the court erred in overruling such a plea where the record showed that the court "heard the plea," but failed to show that any evidence was offered to support it.

3. The case ought not, in any event, to be remanded to try the issue raised by such a plea, if an inspection of the journal of the senate shows that the plea is false in fact.

4. A legislative act may be void in part and valid in part, and that which is valid will be given its full effect.

5. Imprisonment at hard labor for two years for obtaining three dollars by means of a fraudulent device is not a cruel or unusual punishment within the meaning of the constitution.

6. The form of indictment prescribed in section 1561 of the Revised Statutes for obtaining money by false pretences, is sufficient.

7. In a trial under section 1561, it is not necessary to show that the "fraudulent device" could not have been guarded against by a man of ordinary caution and prudence.

8. If one charged with a crime puts his character in issue, it may be shown by his admissions that he had undergone punishment for a crime.

Appeal from the St. Louis Criminal Court, Laughlin, J. *Affirmed*.

William Bush, for the appellant.

J. R. Harris, for the respondent.

Thompson, J., delivered the opinion of the court.

The defendant, indicted under section 1561 of the Revised Statutes, was convicted and sentenced to two years' imprisonment in the penitentiary. The statute reads as follows: " Every person who, with intent to cheat and defraud, shall obtain, or attempt to obtain, from any other person or persons, any money, property, or valuable thing whatever, by means or by use of any trick or deception, or false and fraudulent representation, or statement, or pretence, or by any other means or instrument or device, commonly called the ' confidence game,' or by means or by use of any false or bogus check, or by any other written or printed or engraved instrument, or spurious coin or metal, shall be deemed guilty of a felony, and upon conviction, be punished by imprisonment in the penitentiary for a term not less than two years. In every indictment under this section, it shall be deemed and held a sufficient description of the offence to charge that the accused did, on ————, unlawfully and feloniously obtain, or attempt to obtain (as the case may be), from A. B. (here insert the name of the person defrauded), his or her money or property by means and by use of a cheat or fraud, or trick or deception, or false and fraudulent representation or statement, or false pretence, or confidence game, or false and bogus check or instrument, or coin or metal, as the case may be, contrary to the form of the statutes," etc. The indictment charges that the defendant, at, etc., " unlawfully, feloniously, and with intent to cheat and defraud, did obtain from one William M. Clayton, the sum of $3.10 * * * by means and by use of a trick, deception, and false representation, contrary to the form of the statute," etc.

After the defendant had pleaded " not guilty," leave was granted to him to withdraw his plea of not guilty, and to file a demurrer to the indictment, and also a plea in bar. The record does not show that any issue was taken upon the plea in bar, but it recites that "the court, after such filing, heard the said demurrer and plea in bar, and, having considered the same, overruled them," to which ruling the defendant excepted. The plea in bar was as follows: "And the above-named defendant, for further plea in his behalf as to matters not appearing on the face of the indictment of said cause, says : That he is a citizen of the United States, and that the state of Missouri ought not maintain her aforesaid action against him, because he says, that said action is based upon section 1561 of the Revised Statutes of the state of Missouri of A. D. 1879. And that said alleged statute was not enacted, passed, and signed by the presiding officers of each house of the General Assembly in the manner and form as required by the constitutions and laws of the state of Missouri and of the United States, and the title of said act was only agreed to and not voted upon after the alleged passage of said law, contrary to the law and constitution. Nor do the official journals of each house of the General Assembly of the state of Missouri, concerning the enactment and passage of said alleged statute, and the signing thereof by each of the presiding officers of the said General Assembly, and the sending of the bill for such alleged statute to the governor for approval, and his action concerning it, comply with the constitutional provisions of the state of Missouri and the United States concerning legislation and the manner and mode of legislating. And from the official journals of the senate, it appears that the bill for such alleged statute was read only twice in said senate prior to the signing thereof by its presiding officer. And the official journals of each of said houses of the General Assembly, concerning the passing and enacting of said alleged statute, show, and therein is contained and set forth, that the

title of said alleged statute was enacted and passed contrary to the provisions of the constitutions and laws of the state of Missouri and the United States. And this the said defendant is ready to verify; wherefore he prays judgment, if the state of Missouri ought to maintain aforesaid prosecution against him."

The defendant's counsel takes the position that, as the state did not traverse the facts set up by his plea in bar, which was sworn to, the facts therein stated must be conclusively taken as true. This might be so if the plea pleaded any single fact with sufficient distinctness to invoke the judgment of the court upon it in case it should be found to be true. Some of the allegations are (if we may use such an expression) legal nonsense, and all of them are of a very general character, such as, perhaps, might have been, by reason of their want of certainty, stricken out or disregarded, except one, which is as follows: "And from the official journals of the senate it appears that the bill for such alleged statute was read only twice in said senate prior to the signing thereof by its presiding officer."

This is the single grain of wheat in a mass of chaff. But even this, we think, is not stated with sufficient certainty to put the state under the burden of traversing it. In the first place, it is obnoxious to the objection that it pleads only the evidence of a fact, but not the fact itself. This objection may be technical, where, perhaps, the official journal of the senate would be the only evidence by which the fact could be proved or disproved. But it does not state the fact with that certainty as to time, which is required in good pleading. It does not show at what session of the legislature section 1561 of the Revised Statutes was passed. We know that that body of laws embraces only statutes which were enacted by various legislatures prior to its compilation. But whether this statute was enacted at the session of 1879, or at the session of 1829, or at what session, the pleader does not state. He says that from the

official journals of the senate, it appears that the bill for such alleged statute was read only twice, etc., but he does not state what journals, or the journals of what senate. Every senate which has assembled at a general or special session of the legislature since the state was admitted into the Union, has, presumably, kept a journal, and this allegation would require the prosecuting attorney to grope about among all these tomes, if they aré still in existence, to ascertain the truth or the error of the plea. Again, the constitutional provision requiring bills to be read three times in each house, has not been always in existence. It does not appear in any constitution of the state prior to the year 1875. Hence this allegation may be true, and yet the statute may have passed prior to the date of such a constitutional requirement, and therefore be a perfectly good law.

But assuming that this plea presented any facts sufficiently well pleaded to invoke the judgment of the court upon them, yet it is not clear that this record discloses anything which puts the judge of the criminal court in the wrong. If the plea had been good in substance, and had not been traversed by the state, but yet had been overruled by the court without hearing what the prisoner had to offer in support of it, we should say that this would have been error. But the record here recites that the court heard the plea. This has a technical meaning. It means something more than that the court merely heard the paper read. It means that the court heard what the parties had to offer for or against it. Now, the bill of exceptions does not show that the plaintiff offered any evidence in support of it, or that he demanded judgment upon it because it had not been traversed by the state. We cannot presume against the action of the court. We must presume that the court heard evidence in support of the plea, which, in the opinion of the court, was insufficient, or that the defendant, when called upon, tendered no evidence in support of it. As the

subject is presented, it is difficult for us to say that, in any event, the court has committed error.

But this allegation of the special plea is untrue in point of fact. The statute in question was passed by the legislature at the session of 1879. It appears in the session laws of that year at page 88. We have taken pains to examine the journals of the senate for that session of the legislature, and we find that the bill for this law was read in the senate three different times on three different days, and that it was passed in all respects in conformity with the constitution. The bill originated in the house of representatives, and was called House Bill No. 279. After it had passed the house, it was received by the senate on the 10th of March, 1879. Senate Journal 1879, p. 242. On the same day it was read for the first time. *Ibid.*, p. 245. On the following day a number of house bills were read for the second time, ordered printed and referred, among them House Bill No. 379, which was referred to the committee on Criminal Jurisprudence. *Ibid.*, p. 249. On March 14, the committee on Criminal Jurisprudence, to whom was referred House Bill No. 279, reported, recommending that it do pass, and the bill was immediately taken up, read a third time, as the journal recites, and passed. *Ibid.*, pp. 296, 297. On March 17th, it was read at length by the secretary, and signed by the president of the senate. *Ibid.*, p. 303. Now it does not appear that House Bill No. 379 ever reached the senate. We find no mention in the senate journal of such a bill, except as above stated. Referring to the house journal, we find that House Bill No. 379 was a bill to appropriate money to David Voeth. This bill did not pass the house. The committee on Claims, on March 5, 1879, returned it without recommendation, and the house refused to order it to an engrossment. House Journal 1879, p. 518. It is clear, therefore, that the bill which was read the second time and referred to the committee on Criminal Jurisprudence in the senate, on the 11th of March, was House Bill No. 279, and that it is erroneously printed

House Bill No. 379 in the printed copy of the senate journal, so that the allegation of the special plea is untrue in point of fact; and, as we know this from an inspection of the journals of the legislature, we should not, in any event, send the case back to have the criminal court try the fact.

As to the objection that the section of the Revised Statutes in question does not comply with section 28 of Article IV. of the Constitution, which provides that no bill, except general appropriation bills, shall contain more than one subject, which shall be clearly expressed in its title, we will say that, as the question was not raised in the defendant's plea in bar, we do not know that we ought to consider it at all; but we have looked at the original act, which is here embodied in the Revised Statutes (Sess. Laws 1879, p. 88), and it there clearly appears that the statute has but one subject, and that that subject is well expressed in its title.

The defendant next objected that the statute in question is contrary to that provision of the Bill of Rights (Const., Art. II., sect. 25) which provides that cruel and unusual punishments shall not be inflicted. It is suggested that the statute fixes no minimum limit to the amount of money obtained by the fraudulent device therein denounced, which is necessary to exclude a case from its operation. The statute seems to be open to this objection, and deserves the attention of the legislature. Placed side by side with our statute relating to larceny (Rev. Stats., sects. 1307, 1318), this incongruity is presented that, unless the thing stolen is of the value of $30, it is no felony, but only a misdemeanor, punishable by fine not exceeding $100, or by imprisonment in the county jail not exceeding one year, or both; whereas, under this statute, the money or thing obtained by the cheat, trick, or deception, may be of no greater value than a penny, and yet it is a felony, and the minimum term of imprison-

ment is two years, and no maximum term is fixed by the statute. It may be doubted whether, as the statute is worded, the maximum term can exceed two years. But however this may be, we have no hesitation in expressing an opinion that such a punishment affixed to the obtaining by a cheat, trick, or fraudulent device, of a trifling sum of money, or of property of a trifling value, would be a cruel and unusual punishment, and unconstitutional. But a statute may be unconstitutional and void in its operation upon certain subjects, and valid in its operation upon other subjects ( *The State* v. *Addington, ante,* p. 214 ), and it will not be held void in a case where its operation is not restrained by any provision of the constitution. Applying these principles to this case, we hold that this statute has not operated so as to inflict upon this defendant a cruel and unusual punishment. In other words, we hold that the punishment for two years at hard labor, for obtaining the sum of $3.10 by a trick, or cheat, or fraudulent device, is not, within the sense of the constitution, a cruel and unusual punishment.

The next objection brings us face to face with another question of a grave character. The constititution (Art. II., sect. 22) provides that, " in criminal prosecutions the accused shall have the right   *   *   *   to demand the nature of the cause of the accusation." The counsel for the prisoner takes the position that this indictment, which, following the statute, merely charges in general terms that the defendant obtained from William M. Clayton, $3.10, by means and by use of a trick, deception, and false representation, does not notify the prisoner of the accusation which he is called upon to defend against, because it does not state the matter of which the trick, deception, and false representation consisted ; and he argues that so much of the statute as provides that a description of the offence in the indictment in such general terms shall be held sufficient, is unconstitutional. This question was before the supreme court in the case of

*The State* v. *Fancher* (71 Mo. 460), and these points were there distinctly ruled against the position of the appellant. We shall not therefore consider them.

This disposes of the objection that the demurrer to the indictment ought to have been sustained. The indictment was such an indictment as the statute says "shall be deemed and held a sufficient description of the offence." Thus authorized by a valid statute, it could not have been held bad on demurrer.

Coming now to the trial, without reciting the evidence, there is no doubt that it showed that the prisoner had committed an offence under the statute. The verdict is fully warranted by the evidence.

The prisoner put his character in issue, by calling two witnesses to testify that he had borne a good character. It is true that these witnesses did not prove that he had a good character. At most their testimony went to show that they knew little about his character, and had never heard anything against him. The state, however, thought it proper to rebut this evidence, and for this purpose a police officer was called, who testified as follows : "When I arrested the defendant, he admitted to me that he had been in the penitentiary, and had only just got out of the workhouse a few days before this happened." Where the defendant in a criminal prosecution puts his own character in issue, we cannot say that it is an error to prove by his own admissions that he had undergone punishment for crimes and misdemeanors.

The court admitted, against the defendant's objection, the testimony of the prosecuting witness as to what the saloon-keeper had said concerning the defendant and the crime charged. The defendant saved no exception on this point. The declaration of the saloon-keeper was part of the *res gestæ,* and it was none the less admissible because the defendant had, immediately before, slipped out

of the back door with the prosecuting witness's money in his pocket, so that he did not hear it.

The instructions given by the court properly covered all the elements of the case as made by the testimony, and fairly put the case to the jury. The first instruction offered by the defendant, and refused, could not have been properly given, because there was no evidence in the case to which it was relevant,— no evidence tending to show that the defendant obtained Clayton's money by what is ordinarily termed a breach of trust, or by a false representation as to a future event. The second instruction, also refused, related to the law of reasonable doubt, and the jury had already been properly instructed on that point. The third intruction asked for by the defendant was as follows : " The jury is further instructed that the burden · of proof rests upon the state ; and before the jury is authorized to convict the defendant it must appear by certain and satisfactory evidence, that the defendant feloniously, with intent to cheat and defraud said Clayton, did obtain from him the money alleged in the indictment, by the use of a trick, deception, and false representation, [and that such trick, deception, and false representation were of such. a character against which a man of ordinary caution and intelligence could not have guarded himself."] The court struck out the clause in brackets, and gave the rest of the instruction. This was right. The part stricken out was not the law. The law was intended for the protection of persons who are not possessed of ordinary caution and intelligence ; for these are the persons who are generally victimized by such tricks as the one which the defendant is shown to have resorted to in this case.

We believe we have thus gone over all the objections to this judgment which are worthy of consideration. We see no error in the record prejudicial to the prisoner. The juugment is therefore affirmed. All the judges concur.